YOUNG, APPELLANT, *v.* YOUNG, EXR., ET AL., APPELLEES.

(No. 230—Decided January 15, 1958.)

*Messrs. Earhart, Robertson & Savage,* for appellant.
*Mr. William S. Culp,* for appellee Boyd B. Young, Executor.

CRAWFORD, J. This is an appeal on questions of law from an order of the Probate Court dismissing the petition of plain-

tiff-appellant, surviving spouse, for permission to purchase her deceased husband's undivided one-half interest in their farm and residence.

Answers were filed and the petition opposed by Boyd B. Young, executor, and by The West Jefferson Building & Loan Company, mortgagee of the premises.

The question presented is the interpretation and application of Section 2113.38 (A), Revised Code, which reads as follows:

"A surviving spouse even though acting as executor or administrator, may purchase the following property, if left by the decedent and if not specifically devised or bequeathed:

"(A) The mansion house, including the parcel of land on which such house is situated and lots or farm land adjacent thereto and used in conjunction therewith as the home of the decedent, and the household goods contained therein, at the appraised value as fixed by the appraisers * * *."

There appears to be no dispute as to the facts. The transcript of the docket and journal entries contains an entry wherein the Probate Court made the following findings of fact:

"(1) The decedent, Leland G. Young, died testate June 28, 1955, being at the time of his death the owner in fee simple of an undivided one-half interest in the real estate described in the petition.

"(2) The decedent left surviving him his wife, LuVerna E. Young, and the following named minor children of his marriage to said surviving spouse: Judy Irene Young, aged 14, Kenneth Lee Young, age 11, and Christine Young, age 9.

"(3) The last will and testament of Leland G. Young was duly admitted to probate and record in this court on July 7, 1955. Said will makes no specific devise of the real estate described in the petition. On January 4, 1956, the inventory and appraisement of said estate was filed, and thereafter, on January 19, 1956, was approved pursuant to hearing.

"(4) Within the time limited by law said surviving spouse of the decedent filed her election to take under the statute of descent and distribution and duly commenced this action to purchase the decedent's interest in the real estate at its appraised value.

"(5)  The undivided one-half interest of the decedent in said real estate was appraised at $8,166.67, which the court finds is not so manifestly inadequate as would unconscionably prejudice the rights of the defendants or of creditors.

"(6)  The entire interest in the real estate is subject to the lien of a mortgage executed by Leland G. and LuVerna E. Young, husband and wife, to the West Jefferson Building & Loan Co. on August 20, 1951, which mortgage is duly recorded in Mortgage Record Book 102, page 462, of the Madison County, Ohio, records, and the unpaid balance of the obligation secured by said mortgage was $3,110.15 as of May 22, 1956.

"(7)  The real estate described in the petition was acquired by the decedent and his surviving spouse by deed dated December 5, 1945, being a tract of approximately 36.87 acres. The tract fronts 660 feet on the road and is about 2,400 feet in depth. The buildings are located in a group near the road at the southwesterly corner of the tract. The remainder of the acreage was used for crop land and pasturage.

"(8)  The decedent with his spouse and family lived on the premises since shortly after its purchase. The decedent owned a farm tractor, farm wagon, plow, corn planter, farm truck, waterers and feeders. On the premises were raised livestock consisting of cattle, hogs, sheep and ponies as well as the usual farm crops of this community. Some of the crops were sold, some fed to the livestock and the livestock sold. Most of the farming operation was carried on by the decedent and his family. There was occasional interchange of labor with neighbors for their mutual benefit in particular farm operations."

There was also filed and presented to us a transcript of the testimony taken before the Probate Court, certified by the official court reporter and apparently accepted by both sides as a bill of exceptions. This transcript serves merely to present the facts in a little more detail, showing among other things the division of the farm into fields separated by fences, the manner in which the decedent and his family worked together in the operation of the farm (the husband and wife both having had outside employment), the maintaining of four ponies for the benefit of the three minor children, the activities of the minor son as a member of the Four H Club, interested especially in the

raising of hogs, the practice of selling part of the crops and storing part in the barn for the feeding of the livestock, and the existence of a single well of water on the premises located in the basement of the dwelling and pumped through a supply system for the use of the farm and the watering of the livestock.

The Probate Court found that "the activity of the decedent in the operation of the real estate constituted a business as distinguished from the home of the decedent and his family, as to that portion of the premises upon which crops were produced or livestock raised and that the manner in which the farming operation was performed did not change its character as a business or commercial enterprise."

The opinion of the Probate Court places considerable emphasis upon the traditional definitions of "manor house" and related "curtilage." Carried to its ultimate conclusion the principle contended for by appellee executor, and approved by the Probate Court, would render it practically impossible that a surviving spouse could ever be permitted to purchase the farm along with the mansion house in such a proceeding.

The word, "conjunction," contained in the statute quoted means "the state of being joined together," "combination." Clearly the farm and set of buildings involved here as operated and dealt with by the decedent and his family and owned in common by the husband and wife were in such a state. They were combined to make up that vitally important economic and sociological unit known as a farm home. To separate this farm and these buildings would be to decapitate the farm and to disembody the farm home. The statute, Section 2113.38 (A), Revised Code, was obviously devised to prevent so unfortunate a result.

Our conclusion is entirely consistent with the cases cited and relied upon by counsel. In the case of *In re Estate of Clark*, 102 Ohio App., 200, 141 N. E. (2d), 890, the court made precisely the same decision as ours in a case where there were no minor children and the farm land was divided by highways into three parcels. In the *Clark case*, at page 202, the court adequately distinguished the case of *In re Estate of Burgoon*, 80 Ohio App., 465, 76 N. E. (2d), 310, in these words:

"* * * In this respect this case is clearly distinguishable

from the case of *In re Estate of Burgoon,* 80 Ohio App., 465, 76 N. E. (2d), 310. In the *Burgoon case* the dwelling or mansion house was situated on part of a lot that could easily be divided from, and was not connected with, the two other buildings on the lot, one of which was used as a poolroom and the other as a restaurant; and the decedent had collected rents from the two buildings used strictly for commercial purposes. A proper disposition of the case required that the mansion house be treated separately from the two other buildings, and that the right of purchase by the surviving spouse be limited thereto under the provisions of a section of the Code analogous to the one now under consideration by this court. We wish to emphasize that the Legislature, while adopting the term 'mansion house' in the section controlling in this case, did not abandon the term 'home,' and used it specifically in characterizing the farm land adjacent to the mansion house and used in conjunction therewith in the following language, 'as the home of the decedent.' "

The case of *Scobey* v. *Fair, Admr.,* 70 Ohio App., 51, 45 N. E. (2d), 139, pertained to the rights of a surviving spouse occupying the mansion house under Section 2117.24, Revised Code (Section 10509-79, General Code), in connection with the disposition of money received from the rental of an apartment in said mansion house but not a part thereof. The case of *Dorfmeier, Gdn.,* v. *Dorfmeier, Admr.,* 69 Ohio Law Abs., 15, 123 N. E. (2d), 681, involved an urban property, yet the Probate Court there permitted the surviving spouse to purchase the indivisible property, although part was being rented.

The order of the Probate Court is reversed and the cause remanded for further proceedings in accordance with this opinion.

*Judgment reversed.*

HORNBECK, P. J., and WISEMAN, J., concur.