[Cite as *Chambers v. Bockman*, 2019-Ohio-3538.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| REBECCA C. CHAMBERS, | : | CASE NO. CA2019-03-027 |
| Appellee, | : | O P I N I O N<br>9/3/2019 |
| | : | |
| - vs - | : | |
| | : | |
| DAVID C. BOCKMAN, INDIVIDUALLY<br>AND AS EXECUTOR OF THE ESTATE<br>OF JOSEPH R. FELTER, et al., | : | |
| Appellants. | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. 18CV00292

Finney Law Firm LLC, Isaac T. Heintz, Casey A. Taylor, 4270 Ivy Pointe Boulevard, Suite 225, Cincinnati, Ohio 45245, for appellee

Aronoff, Rosen & Hunt, Kevin L. Swick, 425 Walnut Street, Suite 2200, Cincinnati, Ohio 45202, for appellants

**M. POWELL, J.**

{¶ 1} Appellant, David Bockman, appeals a decision of the Clermont County Court of Common Pleas, Probate Division, granting summary judgment to appellee, Rebecca

Chambers.

{¶ 2} Joseph Feltner ("Decedent") and Chambers were married in 2009. At the time of the marriage, Chambers was living on Tener Road in Peebles, Ohio; Decedent was living on State Route 131 in Miami Township, Ohio. Decedent's property consisted of two lots: a 1.08-acre tract with a house in which Decedent lived ("Decedent's Home"), and a separate, adjacent 55-acre tract where Decedent raised cattle and kept horses ("Decedent's Farm") (the two lots will be referred collectively as the "Property"). The two lots were separated by a fence to prevent the animals from getting out. Following the marriage, the couple maintained and continued to live in their respective residences to a great extent. Decedent further purchased a tract of land on Tener Road, adjacent to Chambers' home. The property was used as rental property ("Rental Property").

{¶ 3} Decedent died testate on June 27, 2017. At the time of his death, he owned the Decedent's Home, the Decedent's Farm, and the Rental Property. His will nominated appellant, a long-time friend, as the executor of his estate. Item II of the will devised the Rental Property to Chambers. Item III of the will devised the residue of Decedent's estate to appellant as follows:

> All of the rest, residue and remainder of my property, real, personal and/or mixed, of which I shall die seized, or to which I may be entitled, or over which I shall possess any power of appointment by Will at the time of my decease and wheresoever situated, whether acquired before or after the execution of this, my Will, to my friend, David C. Bockman, absolutely and in fee simple.

The Decedent's Home and Decedent's Farm were subsequently appraised as a single property and valued at $378,000.

{¶ 4} On July 6, 2018, Chambers filed a complaint in the probate court to purchase "the mansion house located [on] State Route 131, * * * the parcel of land on which it is

- 2 -

situated, and the lot of land adjacent to the mansion house, which is used in conjunction with it * * * for the price of [$378.000]." That is, Chambers, as surviving spouse, sought to purchase the Property as its appraised value pursuant to R.C. 2106.16(A). The complaint named appellant as a defendant, individually and as executor of the Decedent's estate.

{¶ 5} Appellant filed an answer, arguing that Chambers was not entitled to purchase the Property at its appraised value. Specifically, appellant asserted that (1) the Decedent's Home did not qualify as a mansion house because Chambers never resided there, (2) Item III of the Decedent's will specifically devised the Property, including the Decedent's Home, to appellant, and (3) in any event, Chambers was not entitled to purchase the Decedent's Farm.

{¶ 6} Chambers moved for summary judgment. Appellant filed a memorandum in opposition. On March 6, 2019, the probate court granted summary judgment in favor of Chambers. The probate court found that Chambers was entitled to purchase the Property at its appraised value because (1) it was not necessary for Chambers, as surviving spouse, to reside in the Decedent's Home for it to be considered the "mansion house," (2) Item III of the Decedent's will was simply a general bequest and devise of the Property to appellant, not a specific one, and (3) Chambers was entitled to purchase both the Decedent's Home and the adjacent Decedent's Farm under R.C. 2106.16.

{¶ 7} Appellant now appeals, raising three assignments of error.

{¶ 8} An appellate court reviews a trial court's decision on a motion for summary judgment de novo, independently, and without deference to the decision of the trial court. *Flagstar Bank, FSB v. Sellers,* 12th Dist. Butler No. CA2009-11-287, 2010-Ohio-3951, ¶ 7. Summary judgment is proper when there is no genuine issue of material fact remaining for trial, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion adverse to the nonmoving party, construing the evidence most

strongly in that party's favor. *See* Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64 (1978).

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED IN HOLDING THAT THE SUBJECT REAL PROPERTY CONSTITUTED A MANSION HOUSE UNDER R.C. 2106.16.

{¶ 11} Appellant argues the probate court erred in finding that the Decedent's Home was a mansion house, whether or not Chambers resided there. Appellant asserts that "a 'mansion house,' as referred to in R.C. 2106.16, is the joint residence of a decedent and their spouse." Appellant asserts that because Chambers never resided in the Decedent's Home, such was not a mansion house under R.C. 2106.16 and Chambers was therefore not entitled to purchase it. That is, appellant asserts that a surviving spouse's residency in the "family home" is a necessary element for the property to be considered the mansion house under R.C. 2106.16(A). In support of his argument, appellant cites *Scobey v. Fair*, 70 Ohio App. 51 (5th Dist.1942); *In re Estate of Johnson*, 14 Ohio App.3d 235 (3d Dist.1984); and a case from the state of Kentucky. The Kentucky case is not binding on this court and will therefore not be considered. *See McCauly Court Assn. v. Baker*, 12th Dist. Butler No. CA2014-06-126, 2015-Ohio-969.

{¶ 12} The right of a surviving spouse to purchase estate property that has not been specifically devised or bequeathed is set forth in R.C. 2106.16 as follows:

> A surviving spouse, even though acting as executor or administrator, may purchase the following property, if left by the decedent, *and if not specifically devised or bequeathed,* [t]he *decedent's interest in the mansion house, including the decedent's title in the parcel of land on which the mansion house is situated and lots or farm land adjacent to the mansion house and used in conjunction with it as the home of the decedent,* and the decedent's title in the household goods contained in the mansion house, at the appraised value as fixed by the appraisers[.]

(Emphasis added.) R.C. 2106.16(A).[1] The term "mansion house" is not defined in the Ohio Revised Code or its forerunner.

{¶ 13} *Scobey* construed the term "mansion house" as used in a predecessor statute to R.C. 2106.15, which entitles a surviving spouse to remain in the mansion house "free of charge for one year." In *Scobey*, the probate court was confronted with a situation where the decedent owned a residential building in which she and her spouse resided, and which also contained three separate rental units. The surviving spouse claimed that the statute permitted him to retain the income from the rental units. The probate court held that the rental units were apartments and not a part of the mansion house. The Fifth Appellate District upheld the probate court's rejection of the surviving spouse's claim to the rentals, finding that the purpose of the applicable statute "was to preserve the home for the surviving spouse for the period of one year; and that which is used, possessed and occupied by the family as a home is the mansion house." *Scobey*, 70 Ohio App. at 53.

{¶ 14} Appellant argues that *Scobey* recognizes that residency in the "family home" is a necessary element for the property to be considered the mansion house. However, *Scobey* did not consider whether joint residency of spouses is a necessary element of the mansion house. The concern in *Scobey* was whether property in which neither spouse resided may be included as part of the mansion house. *Scobey*'s observation that the "family home" is the "mansion house" was not all inclusive in that it definitely excluded property that was not jointly occupied by the spouses. As stated, the issue of joint residency was not before the court. "'[A] reported decision, although a case where the question might have been raised, is entitled to no consideration whatever as settling * * * a question not

---

1. The statutory provision granting a surviving spouse the right to purchase land at the appraised value was first enacted in 1932 under Section 10509-89, General Code. In 1953, when the legislature switched from the General Code to the Ohio Revised Code, the statutory provision was recodified as R.C. 2113.38. R.C. 2113.38 was subsequently amended and recodified in R.C. 2106.16, effective May 31, 1990. The language in all three statutes is virtually identical.

passed upon or raised at the time of the adjudication.'" *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 11, quoting *State ex rel. Gordon v. Rhodes*, 158 Ohio St. 129 (1952), paragraph one of the syllabus. Thus, *Scobey* does not support the proposition advanced by appellant.

{¶ 15} *Johnson* likewise considered a predecessor statute to R.C. 2106.15 and the parameters of a surviving spouse's right to remain in the decedent's residence as the mansion house. In *Johnson*, the surviving spouse was under a restraining order at the time of the decedent's death, prohibiting her from being at the home of the decedent, and had not lived in the residence for eight months prior to the decedent's death. The Third Appellate District found that "[n]otwithstanding the often quoted definition of 'mansion house' contained in *Scobey*," the decedent's "residence here was the 'mansion house.'" *In re Estate of Johnson*, 14 Ohio App.3d at 236-237. Referring to the characterization of the mansion house as "the home of the decedent" in another statute, the court of appeals held that

> R.C. 2117.24 concerns the mansion house "of the deceased consort," or Howard Johnson in the case *sub judice*. Since this language can be interpreted to mean that one of the family members can, alone, possess the house and since [the other statute] also refers to the "home of the decedent," we believe it fair to consider the residence in the instant case to be the "mansion house." There is no evidence that the instant residence was not the "family" home when the family was together.

*Id.* at 237.

{¶ 16} Appellant cites the last sentence of the above quoted passage to reinforce his argument that only the "family home" may be considered the mansion house. To the contrary, *Johnson* held that the mansion house refers to the decedent's home and that a home can qualify as a mansion house even if it was only possessed by one spouse, stating

[R.C. 2117.24] is written in terms of "after the death of the deceased consort," and for one year thereafter. It says nothing about where the survivor resided or stayed before the death.

It is our conclusion that "remain" as used in this statute is used solely to define a duration of time *in futuro,* and does not limit application to one who was a resident at the time of the decedent's death. One can remain where one has never before been. The word simply defines the duration of stay, not the residence of the occupant.

*Id.*

{¶ 17} Likewise, the "home of the decedent" language in R.C. 2106.16 is written in terms of after the death of the decedent, does not limit its application to one who was a resident at the time of the decedent's death, and is in fact devoid of any language placing a residency requirement on the surviving spouse before he or she can enjoy the benefit of the statute. As the probate court aptly noted, had the legislature intended to define "mansion house" and impose a residency requirement, it could have done so and had ample time to do so following the 1984 *Johnson* decision. However, it did not.

{¶ 18} We therefore find that the probate court did not err in finding that the Decedent's Home was a mansion house for purposes of Chambers' request to purchase it pursuant to R.C. 2106.16(A). Appellant's first assignment of error is overruled.

{¶ 19} Assignment of Error No. 2:

{¶ 20} THE TRIAL COURT ERRED IN HOLDING THAT DECEDENT DID NOT SPECIFICALLY DEVISE THE SUBJECT REAL PROPERTY TO APPELLANT.

{¶ 21} Appellant argues the probate court erred in finding that Item III of the Decedent's will did not specifically devise the Property, including the Decedent's Home, to him.

{¶ 22} As stated above, Item II of the will specifically devised the Rental Property to Chambers. The Decedent's Home and Farm were included in the Decedent's residuary

- 7 -

estate and in turn devised to appellant in Item III of the will. R.C. 2106.16(A) allows a surviving spouse to purchase property not otherwise *specifically* devised or bequeathed.

{¶ 23} A "specific legacy" is "one which, according to the testator's intent, is limited to the subject matter given." *In re Estate of Mellott*, 162 Ohio St. 113, 115 (1954). It is "a bequest of some particular thing or portion of the testator's estate, which is so described by the will as to distinguish it from other articles of the same general nature in the estate, as a gift of a particular thing or of money specified and distinguished from all things." *Id.* Likewise, "a specific devise is a devise of a part or all of or an interest in some particular real estate described by the will so as to distinguish it from real estate generally." *In re Estate of Witteman*, 21 Ohio St.2d 3 (1969), paragraph one of the syllabus.

{¶ 24} "Legacies of a doubtful nature usually are construed as general * * * rather than specific[.]" *Mellott* at 115. The fact that a bequest is residuary in nature does not prevent the legacy from being specific. *Id.* "There is no rule of law which prevents a testator from restricting the operation of a residuary clause to a particular or specific residue, and, in doing so, create a specific devise. However, an intention of a testator to restrict the operation of the residuary clause cannot be deduced from the mere absence of words[.]" *Nagel v. Wilcox*, 104 Ohio App. 534, 537 (9th Dist.1957).

{¶ 25} Upon reviewing Item III of the will, we find that the residuary clause plainly sets forth a general bequest and devise, not a specific one. The clause devises "[a]ll of the rest, residue and remainder of [the Decedent's] property, real, personal and/or mixed" to appellant. The clause does not leave a particular thing or portion of the Decedent's estate to appellant. The clause further does not describe "any particular real estate so as to identify it from real estate generally" or distinguish it from other real property in the Decedent's estate. *Witterman*, 21 Ohio St.2d at 7. Rather, it simply leaves all property of every kind and description whether real or personal to appellant. "Certainly, there is nothing

- 8 -

in the devise * * * to indicate that it is specific in any respect." *Id.* at 8. We further note that residuary clauses similar to Item III of the Decedent's will have been held to be general bequests, not specific ones. *See Witterman*; *Nagel*; *In re Estate of Lahmers*, 5th Dist. Tuscarawas No. 91AP110088, 1992 Ohio App. LEXIS 4362 (Aug. 24, 1992).

{¶ 26} We therefore find that the probate court did not err in finding that the devise of the Property to appellant under Item III of the will was a general devise, not a specific one. Appellant's second assignment of error is overruled.

{¶ 27} Assignment of Error No. 3:

{¶ 28} THE TRIAL COURT ERRED IN HOLDING THAT APPELLEE WAS ENTITLED TO PURCHASE DECEDENT'S RESIDENCE <u>AND</u> DECEDENT'S SEPARATE FARM.

{¶ 29} Appellant argues the probate court erred in finding that Chambers was entitled to purchase the Decedent's Farm under R.C. 2106.16. Appellant asserts that even if the Decedent's Home "was a mansion house [and] was not specifically devised" to him, Chambers is not entitled to purchase the Decedent's Farm under R.C. 2106.16 because it is a separate parcel. In support of his argument, appellant cites *In re Burgoon*, 80 Ohio App. 465 (3d Dist.1946).

{¶ 30} *Burgoon* addressed whether the right of a surviving spouse to purchase a tract of land partly occupied by a dwelling house used by the decedent and the surviving spouse as their mansion house allowed him to purchase two other buildings rented to strangers for business purposes which were located on the same tract of land but physically and completely separated from the mansion house. The Third Appellate District found that the part of the lot upon which the commercial buildings were situated was not used in conjunction with the mansion house as the home of the decedent as required by statute. *Id.* at 470. Consequently, the surviving spouse was not entitled to purchase the entire lot

- 9 -

at its appraised value, but rather, only that part of the lot not occupied by the commercial buildings. *Id.*

{¶ 31} We find that *Burgoon* is factually distinguishable and thus inapplicable. Furthermore, R.C. 2106.16(A) specifically allows a surviving spouse to elect to purchase not only "the mansion house" and the land upon which it stands, but also "*lots or farm land adjacent to the mansion house and used in conjunction with it as the home of the decedent*." Appellant does not argue that the adjacent Decedent's Farm was not used in conjunction with the Decedent's Home as the Decedent's residence.

{¶ 32} We find that two cases from the Fourth Appellate District aptly illustrate the requirements of R.C. 2106.16 (or its predecessors) and support the probate court's decision. *See In re Baker*, 4th Dist. Vinton No. 400, 1983 Ohio App. LEXIS 13580 (Mar. 7, 1983); *In re Estate of Clark*, 102 Ohio App. 200 (4th Dist.1956).

{¶ 33} *Baker* involved five parcels of land. The decedent and the surviving spouse lived in a house on one parcel; the other four parcels were used by the decedent and his family as farm and pasture land. The probate court held that the surviving spouse was entitled to purchase all parcels owned by the decedent under former R.C. 2113.38(A), a predecessor to R.C. 2106.16(A). The court of appeals reversed the probate court's decision. Noting that the four contested tracts were not adjacent to the mansion house as they were all in another township or county, and that there was no evidence the four tracts "were used by the decedent as *his* home, or in connection with his home," the court of appeals found that the surviving spouse did not satisfy the statutory requirements that the property be adjacent to the mansion house and be used in conjunction with as the home of the decedent. (Emphasis sic.) *Baker* at 5-6. She was therefore not entitled to purchase the four contested tracts.

{¶ 34} *Clark* involved a large piece of land owned by the decedent at the time of his

death that was separated into three tracts by two roads. The first tract contained the mansion house in which the decedent and the surviving spouse lived; the second tract contained three buildings; and the third tract had no structures. The decedent operated all three tracts as a one-man farm. The probate court found that the surviving spouse was entitled to purchase the three tracts under former R.C. 2113.38(A). The court of appeals upheld the decision, stating

> There is no question that it is one and the same farm, and that the three tracts together have constituted the whole for many years, that all the land is adjacent to the mansion house in both the sense that it is near and, also, in the sense that it is adjoining. The second question presented is whether the farm land was used in conjunction with the mansion house as the home of the decedent. It must be borne in mind that the statute in question provides for two parcels of land: first, that parcel of land on which the mansion house is situated; and, second, lots or farm land adjacent to the first parcel and used in conjunction therewith as the home of the decedent.
>
> ***
>
> [T]his court can not accept the construction of the present enactment of the law as limiting the surviving spouse to the right to buy at the appraised value only that which the surviving spouse could have had at common law, that is, the mansion house and curtilage. The very wording of the statute extends the right beyond that. Otherwise, there would be no reason to include the second part of the provision for an addition to the land on which the mansion house was situated, using the much broader term "home" in connection with lots and farm land.

*In re Estate of Clark*, 102 Ohio App. at 202-203. *See also Nagel*, 104 Ohio App. 534; *Young v. Young*, 106 Ohio App. 206 (12th Dist.1958).

{¶ 35} We therefore find that the probate court did not err in holding that Chambers was entitled to purchase the Decedent's Farm as it was properly included in the Property pursuant to R.C. 2106.16. Appellant's third assignment of error is overruled.

{¶ 36} In light of all of the foregoing, we find that the probate court properly found that Chambers was entitled to purchase the Property under R.C. 2106.16. The probate

court, therefore, did not err in granting summary judgment to Chambers.

**{¶ 37}** Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.